IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MELVIN GENE HODGES,            )
                              )
        Petitioner,            )
                              )
v.                            )    CASE NO. 3:14-CV-374-RAH-SMD
                              )              [WO]
JOHN Q. HAMM, Commissioner,    )
Alabama Department of Corrections, )
*et al.*,                      )
                              )
        Respondents.           )

## ORDER

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Petitioner has filed a Motion to Alter or Amend (Doc. 53) this court's September 4, 2024, Memorandum Opinion (Doc. 51) and Judgment (Doc. 52) denying him habeas corpus relief.  For the following reasons, the motion will be DENIED.

## STANDARD OF REVIEW

Rule 59(e) permits a party to file a motion to alter or amend a judgment entered against the party within twenty-eight days of entry of the adverse judgment. "'The only grounds for granting [a Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact.'"  *MacPhee v. MiMedx Group, Inc.*, 73 F.4th 1220, 1250 (11th Cir. 2023) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)).  A "Rule 59(e) motion [cannot be used] to relitigate old matters,

raise argument or present evidence that could have been raised prior to the entry of judgment." *Id*. (quotation and citation omitted). *See also Banister v. Davis*, 590 U.S. 504, 508 (2020) (citation omitted) (observing, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued"). "By contrast, courts may consider new arguments based on an intervening change in controlling law and newly discovered or previously unavailable evidence. But it is rare for such arguments or evidence to emerge within Rule 59(e)'s strict 28-day timeframe." *Id*. at n.2 (internal quotation marks and citation omitted).

## DISCUSSION

Although Petitioner's motion does not articulate the above standards governing this court's review of his motion, his reply in support of the motion at least acknowledges the burden he faces in seeking relief under Rule 59. *See* Doc. 60 at 5–6. The reply brief further appears to concede that the motion is not premised upon any newly-discovered evidence or an intervening change in controlling law. *Id*. Instead, the brief makes clear, the motion is based upon Petitioner's claim that the Memorandum Opinion contains several manifest errors of law and fact. *Id*. Petitioner therefore travels under an extremely demanding standard. Black's defines "manifest error" as "[a]n error that is plain and indisputable and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Black's Law Dictionary (12th ed. 2024). In his reply brief, Petitioner cites an

unpublished Eleventh Circuit decision which, relying upon Seventh Circuit authority, inserts "misapplication" into this formulation of "manifest error." *See Shuler v. Garrison*, 718 F. App'x 825, 828 (11th Cir. 2017) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)) ("A manifest error is one that amounts to a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'").[1]

Proceeding with the leave he perceives to have been afforded by *Shuler*, Petitioner argues that, rather than any "complete disregard" of controlling precedent, relief under Rule 59(e) is warranted because of this court's "misapplication" of precedent: "Here, Mr. Hodges respectfully raised several misapplications of controlling precedent and clear errors with respect to his *Ake* claim, the unconstitutionality of judicial override, judicial bias, and his IAC claim." Doc. 60 at 6. Even assuming that, per *Shuler*, misapplication of controlling precedent may support altering or amending a judgment, it remains that Rule 59(e) establishes a "high standard for [a] rare form of relief." *Hearn v. International Business Machines*, 588 F. App'x 954, 958 (11th Cir. 2014). It follows that a "misapplication" of controlling precedent sufficient to constitute "manifest error" must itself be "plain

---

[1] *Shuler* also cites a First Circuit decision which omits "misapplication" from its definition of "manifest error" and, therefore, hews more closely to Black's definition. *See* 718 F. App'x at 828 (citing *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)).

and indisputable." Otherwise, Rule 59(e) becomes nothing more than a vehicle for workshopping appellate arguments rather than affording the district court the opportunity to correct a "manifest error" in its judgment.

Accordingly, a good faith, even fervent dispute about the scope of controlling precedent or its application to the unique facts before the district court likely will not suffice to warrant relief under Rule 59(e). *See, e.g., Daughtry v. Army Fleet Support, LLC, et al.*, Civ. No. 1:11-cv-153-MHT, 2014 WL 466100, *2 (M.D. Ala. Feb. 5, 2014) ("Manifest error does not mean that one does not like the outcome of a case, or that one believes the court did not properly weigh the evidence."). At a minimum, a "plain and indisputable" misapplication of controlling precedent should be made objectively apparent by citation to binding authority. An augmented retread of argument already rejected by the district court will not suffice.

This court has carefully reviewed Petitioner's motion and concludes that, in each instance in which he seeks to or alter or amend this court's judgment, Petitioner has failed to demonstrate manifest error. In short, his arguments that the court has misapplied controlling precedent do not establish "plain and indisputable error" of the magnitude sufficient to warrant relief under the rule. While he earnestly disagrees with many of the court's conclusions, his arguments show only that "he simply believes this court got it wrong the first time." *Daughtry*, 2014 WL 466100,

*2. Because Petitioner therefore has failed to demonstrate manifest error, he is not entitled to relief pursuant to Rule 59(e).

Although the above determination disposes of Petitioner's motion in its entirety, this order will proceed to address some of the arguments raised by Petitioner in support of his various assertions of manifest error to clarify the Memorandum Opinion or to correct Petitioner's apparent misunderstandings of the same. This order will address Petitioner's arguments in the order in which they are presented in the motion.

## I.    CLAIM TWO

Petitioner first argues that the court manifestly erred in concluding that the Alabama Court of Criminal Appeals ("ACCA") did not unreasonably apply *Ake v. Oklahoma*, 470 U.S. 68, 74 (1985), when it rejected his claim of trial court error regarding the denial of his pretrial motions for expert assistance. Specifically, Petitioner challenges the Memorandum Opinion's disposition of his claim respecting his requests for funds to retain a neuropsychologist and a mitigation specialist.

Several of Petitioner's arguments divorce the Memorandum Opinion's findings from the context in which they were presented in order to distort those findings and claim manifest error. It is therefore constructive to briefly outline the Memorandum Opinion's sequence of analysis of Claim Two before responding to Petitioner's specific allegations of error. After discussing the Supreme Court's

opinion in *Ake*, which the parties agreed was the "clearly established federal law" governing Petitioner's claim, the Memorandum Opinion discussed the relevant state court proceedings, both at the trial court and on appeal. Doc. 51 at 239–54. The Memorandum Opinion then addressed Petitioner's claim that *Ake* required the trial court to provide him with funds for nonpsychiatric expert services, including an investigator and a mitigation specialist. Noting the express holding of *Ake*[2] and Eleventh Circuit authority plainly recognizing that *Ake*'s holding does not clearly establish any right to the provision of nonpsychiatric expert services, the Memorandum Opinion first concluded that the ACCA did not unreasonably apply *Ake* in rejecting Petitioner's claim challenging the denial of funds to retain an investigator and a mitigation specialist. Doc. 51 at 254–56.

Turning next to Petitioner's claim challenging the denial of his request for a neuropsychologist, the Memorandum Opinion acknowledged that the question of *Ake*'s applicability to such request was closer. The Memorandum Opinion first concluded that the ACCA did not unreasonably apply *Ake* in deciding that Petitioner did not demonstrate that his sanity was in question and would be a significant factor at his trial. Doc. 51 at 256–62. This is so because, although Petitioner requested the

---

[2] As a reminder, *Ake*'s express holding is as follows: "We hold that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 470 U.S. at 74.

assistance of a neuropsychological expert for a host of purposes related to his defense at the guilt and penalty phases of his trial, nothing in his pretrial motion or in any other part of the pretrial record demonstrated that his sanity, as opposed to more nebulous questions about his mental health, was seriously in doubt or was likely to be a significant factor at trial.

Finally, the Memorandum Opinion addressed Petitioner's claim that *Ake* required the provision of neuropsychological assistance even if his sanity and "future dangerousness" were not at issue at his trial. The Memorandum Opinion acknowledged intervening Supreme Court authority, *McWilliams v. Dunn*, 582 U.S. 183 (2017), which, although it did not hold that *Ake* requires the provision of expert assistance for purposes broader than presenting an insanity defense or rebutting evidence of future dangerousness, arguably supports such a reading of *Ake*. Doc. 51 at 264–70. Here, the Memorandum Opinion concluded that the ACCA reasonably, "even if incorrectly," applied *Ake* because Petitioner's showing that his "mental condition" was "seriously in question" and would be a "significant factor" at his trial was overly general and not on par with the defendants in *Ake* and *McWilliams*. *Id*. at 271–74.

Most salient on this point was that, although Petitioner twice pleaded not guilty by reason of insanity, he did not attempt to advance this defense by filing a motion to have his mental condition at the time of the offense examined. This

contrasted sharply with the defendant in *Ake*, who not only pursued an insanity defense but also presented to the trial court with bizarre behaviors and was found incompetent to stand trial after his arrest.  As the Supreme Court observed, these circumstances should have provided a substantial basis for the trial court in that case to conclude that Ake's mental condition would be a significant issue at his trial. Here, however, Petitioner only filed a motion requesting funds to hire a neuropsychological expert and supported his motion with anecdotal assertions of childhood head injuries, poverty, and substance abuse which suggested a "developmental history and traumatic life events."   Doc. 51 at 272–73.  The ACCA thus reasonably concluded that Petitioner's history, and his showing to the trial court, did not provide the trial court with a substantial basis to conclude that his "mental condition" at the time of the offense would be a *significant* factor at his trial.

Accordingly, the Memorandum Opinion concluded that the ACCA did not unreasonably apply *Ake*, even if that decision is construed as establishing a broader due process rule than what is expressed it its holding, because doing so on the facts before the ACCA would substantially convert the due process right in *Ake* into a general right to psychiatric assistance, which both the Supreme Court and the Eleventh Circuit have maintained *Ake* does not provide, as one can scarcely imagine a capital defendant who will be unable to point to anecdotal circumstances in his or her life suggesting a "developmental history and traumatic life events."

With this summary of the Memorandum Opinion's analysis, the court turns to Petitioner's specific criticisms of the Memorandum Opinion and whether those criticisms establish manifest error. Petitioner first argues that *Ake*'s "principles and factors" support his claim of manifest error. Doc. 53 at 9–12. He provides a detailed analysis of *Ake*, describing the "fairness" principle animating that decision and the three-factor test the Supreme Court employed to arrive at its holding. Petitioner's analysis of *Ake*, while cogent, does little more than invite this court to provide him with another bite at the apple based upon the "clearly established federal law" already applied in the Memorandum Opinion. Furthermore, his "principles and factors" argument was not presented in the petition for habeas corpus relief or in his supporting briefing with anywhere near the level of detail and specificity with which it is presented in his Rule 59 motion. *See* Doc. 1 at ¶¶ 269–79; Doc. 31 at 67–73; Doc. 42 at 35–42.

In any event, the core dispute Petitioner articulates with the Memorandum Opinion's findings and conclusions appears to concern whether the Memorandum Opinion properly discerned the scope of *Ake*. Petitioner describes as "insular" the Memorandum Opinion's observation that *Ake*'s holding is "ostensibly narrow." Doc. 53 at 10. But the holding of *Ake*, plainly stated twice in that decision and quoted in footnote two above, is "ostensibly narrow." To reiterate, the Supreme Court twice stated that where a defendant shows that his "sanity at the time of the

offense is likely to be a significant factor at trial," then due process requires the provision of psychiatric assistance to assist him with preparing and presenting that defense. 470 U.S. at 74, 83. *Ake*'s holding, or at least the portion which the Supreme Court itself twice described as its holding, plainly says nothing about whether due process requires the provision of psychiatric assistance for other purposes, including, in particular, developing general mitigation evidence related to mental health.[3]

If the Memorandum Opinion's reasoning in this regard is fairly criticized as "insular," which this court takes to be synonymous with narrow-minded or limited, then that is because "insular" is actually a pretty good descriptor of the standard of review required by AEDPA. This court was not charged with deciding whether the ACCA correctly applied *Ake* or whether it agreed with the ACCA's decision. Rather, this court was charged with deciding whether, pursuant to 28 U.S.C. § 2254(d)(1), the ACCA's decision reflected an unreasonable application of *Ake*'s holding, *i.e.*, is there no possibility that "fairminded jurists" could agree with the ACCA's decision? *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Notwithstanding Petitioner's substantially new and more detailed argument about *Ake*'s "principles and factors," it continues to appear to this court that the ACCA reasonably, even if incorrectly, applied *Ake* because fairminded jurists can,

---

[3] Hence the Memorandum Opinion's simple observation that *Ake*'s holding is "ostensibly"—meaning apparently—narrow.

and have, agreed about the "ostensibly narrow" scope of *Ake*'s holding.  *See, e.g.*, *Mason v. Mitchell*, 320 F.3d 604, 615–16 (6th Cir. 2003) (holding that *Ake* did not provide habeas petitioner with the right to psychiatric assistance in capital sentencing phase because the state did not present evidence of future dangerousness during penalty phase); *Weeks v. Angelone*, 176 F.3d 249, 265 (4th Cir. 1999) ("We interpret *Ake* and *Caldwell* [*v. Mississippi*, 472 U.S. 320 (1985)] together to stand for the proposition that due process as of the time Weeks's conviction became final only required that an indigent defendant be appointed psychiatric experts when his sanity is at issue in trial."); *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1120 (6th Cir. 1990) (holding that *Ake* does not require psychiatric assistance for purposes of presenting defense of diminished capacity).  Certainly, courts have reached different conclusions in this area.  But this only demonstrates that fairminded jurists can reasonably debate about the scope of *Ake*.  More relevantly, for purposes of the instant motion, these authorities demonstrate that Petitioner is not entitled to Rule 59 relief because the Memorandum Opinion did not plainly and indisputably misapply *Ake*.

Petitioner also disputes the Memorandum Opinion's conclusion that the ACCA reasonably determined that Petitioner did not satisfy *Ake* because he did not adequately demonstrate that his sanity—even if that term is afforded a broader construction tantamount to "mental condition"—would be a significant factor at his

11

trial.  In this regard, he accuses the state courts and this court of having posed a "Catch-22 scenario" for him.  Doc. 53 at 17.  As best the court can tell, the "Catch-22" Petitioner describes is that the state courts, and by extension this court, would require him to produce the kind of expert opinion about his mental condition that would be needed to justify his request for expert assistance.

That is not, however, what the Memorandum Opinion concluded.  Rather, the Memorandum Opinion concluded that the ACCA reasonably, even if incorrectly, decided that Petitioner did not adequately demonstrate that his "sanity" would be a significant issue at trial because, although he twice entered pleas of not guilty by reason of mental disease or defect, he did not file a motion requesting a pretrial evaluation of his mental condition at the time of the offense, which the trial court invited him to do in its order denying his motion for funds to retain a neuropsychologist.  This circumstance, considered with the numerous other facts which distinguish Petitioner's circumstances from those of the defendants in *Ake* and *McWilliams*, demonstrate that the ACCA's decision was reasonable.

To reiterate, rather than file a motion for a pretrial mental evaluation, and having presented with no concerning behavior or compelling psychiatric history that would have otherwise apprised the trial court that Petitioner's "sanity" or "mental condition" was seriously at issue and likely to be a significant factor at trial, Petitioner merely presented a motion describing vague anecdotal events like

childhood head trauma, poor nutrition, and substance abuse as indicators of possible mental illness with potential relevance to a broad range of guilt and penalty phase issues.  The Supreme Court has not clearly established that such a general showing in support of such general purposes mandates relief under *Ake*.  Therefore, the Memorandum Opinion concluded, the ACCA did not unreasonably apply *Ake* in concluding that Petitioner was not entitled to relief on his claim of error.

Nothing in Petitioner's motion demonstrates "manifest error" in this conclusion.  The court will address Petitioner's most substantial claims of error in order.  Petitioner charges that the Memorandum Opinion "unfairly" characterized his "preliminary showing of his mental condition and pleas of not guilty by reason of mental defect or disease as mere 'placeholder[s].'"  Doc. 53 at 17.  But the Memorandum Opinion only described Petitioner's two pleas of not guilty by reason of mental disease or defect as "placeholders" because, although counsel twice entered such pleas, counsel never moved for an examination of Petitioner's mental condition at the time of the offense, as provided in Rule 11.2(a)(2) of the Alabama Rules of Criminal Procedure.  This omission permits the reasonable inference that counsel entered the pleas to preserve the right to present the defense—*i.e.*, a "placeholder"—but lacked any reason to proceed with this affirmative defense.

Petitioner also argues that the Memorandum Opinion ignored *Ake*'s "principles and factors" and, instead, "focused on irrelevant factual distinctions

between Mr. Hodges's case and *Ake* and read in requirements that *Ake* never discussed." Doc. 53 at 18. In support, he first appears to argue that the trial court's summary denial of his motion for funds, despite indicia in the record that the trial court was unfamiliar with the motion or even the function of a neuropsychologist, should inform this court's review under AEDPA. *Id.* at 19–20. But it was the ACCA's reasoned decision affirming the trial court that was before this court for review under AEDPA. Even if the trial court expressed some bewilderment about the purpose of a neuropsychologist several months after having denied Petitioner's motion, this court is not free to presume that the ACCA also did not understand the basis for Petitioner's motion and issued its decision under a similar cloud of ignorance.

Petitioner next argues that this court somehow discerned in *Ake* a requirement "that psychologists certify under oath that the defendant's sanity at the time of the crime was in question *prior to examining the defendant*." Doc. 53 at 20 (emphasis Petitioner's). Not so; the part of the Memorandum Opinion Petitioner cites for this claim only observed the subtle but significant distinction between Petitioner's pretrial motion for funds to retain a neuropsychologist, which plainly stated that there was a question whether he was "insane," and the supporting affidavit of the neuropsychologist whom counsel hoped to retain, which largely mirrored the factual allegations of the motion but did not similarly assert there was any question about

Petitioner's sanity.  Doc. 51 at 258–60.  And, as detailed in the description of the Memorandum Opinion's sequence of analysis, this observation was only in service of the Memorandum Opinion's narrow conclusion that nothing in the motion for funds, or in the neuropsychologist's affidavit, demonstrated specifically that Petitioner's sanity—meaning, as relevant under Alabama law, "his ability to appreciate the nature and quality of his acts"—"was in question or was likely to be a significant issue at trial."  *Id*. at 260.

Petitioner also argues that the Memorandum Opinion "considered factors that . . . *Ake* explicitly disclaimed as part of its decision" and charges that "[r]eliance on factors that *Ake* explicitly said was not part of its decision is error."  Doc. 53 at 21. But the six factors he identified—including, *inter alia*, Ake's "sole defense" of insanity, Ake's bizarre behavior during pretrial proceedings, a psychiatrist's opinion that Ake was incompetent to stand trial, *etc.*—were explicitly relied upon by the Supreme Court in finding a due process violation because, "[t]aken together," they demonstrated "that the question of Ake's sanity was likely to be a significant factor in his defense."  470 U.S. at 86.  The Supreme Court merely expressed in a footnote that it was not holding that "any of these factors, alone or combination, is *necessary* to make this finding."  *Id*. at n.12 (emphasis supplied).

Even if the Supreme Court did not describe any one of the six *Ake* factors as "necessary" to its decision, taken together, they plainly were relevant to that decision

and lower courts have continued to look to those factors when assessing claims under *Ake*. *See, e.g., Hightower v. Schofield*, 365 F.3d 1008, 1018 (11th Cir. 2004) (identifying the *Ake* factors and concluding that the habeas petitioner had "failed to satisfy his preliminary burden under *Ake*" because, *inter alia*, defense counsel had "made no issue of Hightower's 'present sanity'" and neither the trial court nor the defense "ever made an issue of Hightower's behavior"); *Bowden v. Kemp*, 767 F.2d 761, 765 (11th Cir. 1985) (reviewing the six *Ake* factors and finding, "[n]o such factors existed in Bowden's case; there is no indication that he presented the trial judge with any evidence suggesting that sanity would play a significant role in the trial."). It was not manifest error for this court to similarly look to those factors when assessing the reasonableness of the ACCA's decision.

Finally, Petitioner argues that the Memorandum Opinion manifestly erred in concluding that the ACCA did not unreasonably apply *Ake* in rejecting his argument that he was entitled to funds to retain a mitigation specialist. Doc. 53 at 22–27. The Memorandum Opinion cited relevant Eleventh Circuit authority concluding that, at the time of the ACCA's decision in this case, neither *Ake* nor any other Supreme Court decision "'require[d] a state to provide an indigent defendant with nonpsychiatric experts.'" Doc. 51 at 256 n.27 (quoting *Grayson v. Thompson*, 257 F.3d 1194, 1231 (11th Cir. 2001)). Other appellate courts have agreed with this reading of *Ake*'s mandate. *See, e.g., Wogenstahl v. Mitchell*, 668 F.3d 307, 340 (6th

16

Cir. 2012) ("*Ake* itself does not mandate the appointment of a general mitigation expert or investigator for the penalty phase.").  Petitioner has no substantive response to these authorities other than to reiterate his contention that *Ake* must encompass nonpsychiatric experts, especially where such experts "can aid the defense and the jury in understanding and presenting the defendants' mental condition at the time of the offense."  Doc. 53 at 26–27.  Considering the authorities cited in the Memorandum Opinion and above, however, Petitioner fails to demonstrate a plain and indisputable misapplication of *Ake* or any other manifest error in the Memorandum Opinion's conclusion.

## II.    CLAIM THREE

In Claim Three of his petition, Petitioner alleged that Alabama's capital sentencing scheme is unconstitutional in numerous respects.  The Memorandum Opinion concluded that, in each instance of alleged error, the state courts did not unreasonably apply clearly established federal law and did not base any decision upon an unreasonable finding of fact on the record before the state courts.  Doc. 51 at 275–346.  Petitioner now argues the court manifestly erred in disposing of three of his subclaims.  This order will address his arguments in the order in which they are presented in the motion.

### A.    Claim III.E

Petitioner first argues that the Memorandum Opinion manifestly erred in concluding that the Alabama Supreme Court ("ASC") did not unreasonably apply *Eddings v. Oklahoma*, 455 U.S. 104 (1982), when it held that the trial court did not unconstitutionally restrict the presentation of mitigating evidence at Petitioner's trial.  Doc. 53 at 29–36.  As noted in the Memorandum Opinion, however, Petitioner did not challenge, or even acknowledge, the ASC's opinion addressing this issue on direct review.  *See* Doc. 51 at 313.  He may not now present argument about the ASC's purported unreasonable application of *Eddings* that he failed to present prior to judgment.

Furthermore, nothing in Petitioner's belated argument about the ASC's opinion demonstrates manifest error.  For the reasons already explained in the Memorandum Opinion, *see* Doc. 51 at 314–23, it is at least disputable whether the ASC unreasonably applied *Eddings*.  This, indeed, is why the Memorandum Opinion granted a certificate of appealability on this issue.  Finally, Petitioner appears to assert manifest error in the Memorandum Opinion's conclusion that any error under *Eddings* was harmless.  Doc. 53 at 36–37.  Yet he fails to address the Memorandum Opinion's basis for this conclusion, including that he has never specifically alleged what additional evidence trial counsel would have presented during the penalty phase if not for the trial court's remarks about the relevance of some witness

18

testimony about Petitioner's family's moves, and he does not address the evidence in the state court record showing that, in fact, trial counsel did present substantially all the evidence in his arsenal about the family's moves. *See* Doc. 51 at 324–27. Petitioner has not demonstrated manifest error.

## B.     Claim III.A

Petitioner argues that the Memorandum Opinion failed to address his claim that the Eighth Amendment's "evolving standards of decency" compels the conclusion that judicial override, as it was practiced in Alabama at the time of his conviction, is unconstitutional. Doc. 53 at 37–41. He provides precisely one cite to the argument he faults the Memorandum Opinion for having overlooked: page 67 of his brief in support of the merits of his petition. *See id*. at 37. While page 67 indeed references the Eighth Amendment, the portion of the brief containing page 67 purports to challenge judicial override on the basis of *Ring v. Arizona*, 536 U.S. 584 (2002), a decision which had nothing to do with judicial override or the Eighth Amendment's "evolving standards of decency" jurisprudence, but was, instead, concerned with the constitutional implications, under the Fifth and Sixth Amendments, of judicial factfinding in Arizona's capital sentencing scheme.[4]

---

[4] This is how Petitioner captioned the argument section containing page 67 of his brief: "In Light of *Ring v. Arizona*, Alabama's Judicial Override Process in Capital Sentencing Matters is Unconstitutional; In Particular, the Judicial Override in This Case Was Unconstitutional." Doc. 31 at 64.

Petitioner unequivocally argued in this section of his brief that his sentence violated *Ring* because the trial court, rather than the jury, made the factual findings necessary to sentence him to death, and that the state court's decision affirming his sentence therefore "resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent," namely, *Ring*.  Doc. 31 at 68.  *Ring*, however, plainly did not "clearly establish" that Alabama's judicial override is unconstitutional under the Eighth Amendment.

More importantly, Petitioner's presentation of this claim in the actual habeas petition is even more tenuous than what is found on page 67 of the merits brief.  As it is articulated in the petition, Claim III.A challenges judicial override under *Ring*, with no reference to any analysis under the Eighth Amendment's "evolving standards of decency." Pet. ¶¶ 281–88.  Although there is one mention of the Eighth Amendment in this portion of the petition, the claim is only that Petitioner's rights under the Eighth Amendment were violated because he was sentenced to death "as a result of a judge's findings, rather than a jury's." Pet. ¶ 288.  This lone allegation— which, again, is apparently more concerned with judicial factfinding as discussed in *Ring*—is insufficient to place Respondent or the court on notice that Petitioner is arguing that "evolving standards of decency" have rendered judicial override unconstitutional.  Because the claim was not plainly stated in the petition, and was not adequately argued in his briefing, the court did not manifestly err in failing to

address the Eighth Amendment challenge to the practice of judicial override that Petitioner argues was hidden within his challenge to override under *Ring*.

It follows that, where Petitioner did not plainly state in his petition the Eighth Amendment challenge he now presses and did not fulsomely argue the claim in his briefing, then the more substantive argument he presents over several pages in the instant motion, *see* Doc. 53 at 37–41, was not presented prior to judgment.  As reviewed above, Petitioner may not employ Rule 59 to present argument he could have, but did not, present prior to judgment.  Furthermore, even if this court could have erred in failing to give his current Eighth Amendment argument the review that neither his petition nor his briefing demanded, it remains that the substantive claim itself is without merit and, accordingly, no manifest error occurred.  This is so because, as discussed in the Memorandum Opinion in relation to other claims by Petitioner, the Supreme Court upheld Alabama's practice of judicial override under the Eighth Amendment in *Harris v. Alabama*, 513 U.S. 504 (1995).  Neither *Ring* nor any other Supreme Court decision has rendered that decision inapplicable here or has otherwise clearly established that *Harris* is no longer good law, and only the Supreme Court is empowered to determine that "evolving standards of decency" require the overruling of *Harris*.  Because the Supreme Court has not done this, the state courts did not unreasonably apply clearly established federal law in rejecting

any such claim and this court could not have manifestly erred in failing to conclude that the state courts were unreasonable in that decision.

### C.    Claim III.D

Petitioner next argues this court should "reconsider denying [his] claim that the Alabama death penalty statute is unconstitutional because it violates the Eighth and Fourteenth Amendments by allowing for the standardless imposition of the death penalty contrary to Supreme Court precedent in *Furman* and *Gregg*." Doc. 53 at 37.  Petitioner's claim that Alabama's former practice of judicial override permitted the unconstitutionally arbitrary and unequal imposition of the death penalty was addressed in the Memorandum Opinion.  *See* Doc. 51 at 291–300.  Nothing in the instant motion demonstrates that this court plainly and indisputably erred in rejecting his claims.  Instead, the motion largely seeks to relitigate his claim with added clarification of his argument.  Were Rule 59 a proper vehicle for such argument, then it suffices to reiterate the Memorandum Opinion's conclusion that no authority cited by Petitioner clearly establishes that Alabama's judicial override violates any provision of the Eighth or Fourteenth Amendments, and the ACCA did not unreasonably fail to conclude otherwise.

As discussed in the Memorandum Opinion, *see* Doc. 51 at 294–97, except at its most general, Petitioner's claim has presented a moving target from his argument on direct appeal in the ACCA, to his federal habeas petition, to his merits briefing,

and now to the instant motion.  For example, Petitioner asserts in the instant motion that *Furman v. Georgia*, 408 U.S. 238 (1972), provides the "clearly established federal law" which the ACCA unreasonably applied in rejecting his claim.  Doc. 53 at 39.  Yet *Furman* is not even cited in the relevant portion of his brief on direct appeal to the ACCA.  *See* Doc. 21-14 at 79–82.  In fact, *Furman*'s only appearance in the appellate brief is in support of his claim challenging Alabama's method of execution.  *See id*. at 162.  In the relevant portion of the federal habeas petition, *Furman* was cited only as marking the point at which the "touchstone for the validity of death penalty procedures has been the effort to ensure that the death penalty is not arbitrarily imposed."  Pet. ¶ 295.  And, as noted in the Memorandum Opinion, *see* Doc. 51 at 292, 295, the petition itself appears to allege only that the ACCA's opinion affirming the purported "standardless" imposition of death sentences in judicial override cases violates the Eighth Amendment.  *See* Pet. ¶ 297.[5]  While Petitioner's federal court merits brief attempted to cobble together a claim that Alabama's "standardless" judicial override violated the Eighth Amendment and the

---

[5] One searches the federal habeas petition in vain to substantiate the instant motion's contention that Petitioner "set forth in his petition that the Fourteenth Amendment prohibits the type of unequal treatment that is so unjustifiable as to be violative of due process." Doc. 53 at 38 (quotations and citations omitted).  Neither this argument, nor the cases cited in support, appear in the relevant portion of the federal petition and the motion itself cites Petitioner's merits brief, not his petition, for this contention.  *Id*. (citing Doc. 31 at 73).  As explained previously, Petitioner may not amend his petition via his merits briefing, and this court could not have manifestly erred in failing to address a claim not presented in the federal petition.

due process and equal protection components of the Fourteenth Amendment, tracing a throughline of consistent, supported argument for this claim from the state court to now is, as the Memorandum Opinion observed, difficult.

Nevertheless, the Memorandum Opinion addressed Petitioner's claims that Alabama's judicial override violated the Eighth and Fourteenth Amendments. Notwithstanding his present effort to distinguish it, the Supreme Court's decision in *Harris* disposes of his claim that Alabama's judicial override violates the Eighth Amendment.  The Court in *Harris* upheld Alabama's capital sentencing statute, which, at the time, required only that the trial court "give consideration" to a jury's sentencing recommendation.  *See* 513 U.S. at 509–10.  The Court observed that, unlike the similar capital sentencing scheme in Florida which the Court had already upheld, Alabama's statute, and its appellate courts when construing the statute, did not prescribe the "weight" the jury's recommendation should be afforded and, also unlike in Florida, did not establish a standard to guide a trial court's decision whether to override a jury's recommendation.[6]  *Id*.  While Petitioner maintains in the instant

---

[6] Specifically, the Court noted that "Alabama courts have refused to read the *Tedder* standard into the statute."  513 U.S. at 509.  Florida's "*Tedder* standard" required that, in order to override a jury's life recommendation, the trial court must find that "'the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ.'"  *Id*. (quoting *Tedder v. State*, 322 So. 2d 908, 910 (Fla. 1975)).  As determined in *Harris*, Alabama's declination to adopt this standard, or, for that matter, any other standard governing the trial court's decision to override a jury's recommendation, did not render its capital sentencing scheme unconstitutional.  *Id*. at 511.

motion that his claim is different from that presented in *Harris*—that he challenges not the "failure to mandate the weight a jury verdict should be given," but, instead, the absence of "guidelines or standards for a trial judge to follow to evaluate or weigh a jury's verdict or sentencing recommendation" (Doc. 53 at 41)—it is apparent that *Harris* at least implicitly, if not outrightly, rejects his Eighth Amendment claim. *See* 513 U.S. at 511 ("Consistent with established constitutional law, Alabama has chosen to guide the sentencing decision by requiring the jury and judge to weigh aggravating and mitigating circumstances."). Nothing in *Furman* requires more than this under the Eighth Amendment.

Likewise, the Memorandum Opinion noted that Alabama's state courts have concluded that *Harris* also disposes of the Fourteenth Amendment due process challenge presented by Petitioner. Doc. 51 at 298. The Memorandum Opinion further cited Eleventh Circuit law similarly rejecting a Fourteenth Amendment due process challenge to override pursuant to *Harris* and accordingly concluded that the ACCA did not unreasonably apply clearly established federal law. *Id*. (citing *Madison v. Comm'r, Ala. Dep't of Corr*., 677 F.3d 1333, 1336 (11th Cir. 2012)). Petitioner offers no substantive rebuttal to the Memorandum Opinion's conclusion and citation of Circuit authority other than to reiterate his contention that *Furman* must require a "standard or guideline" to be "followed by the trial judge to evaluate

or 'consider' the jury's recommendation." Doc. 53 at 42. The Memorandum Opinion did not manifestly err in concluding otherwise.

Finally, Petitioner fails in his motion to show manifest error in the Memorandum Opinion's denial of the equal protection component of this claim. The Memorandum Opinion found that Petitioner had failed in his petition and briefing to show that the ACCA unreasonably rejected any claim that his death sentence was the result of "unequal treatment so unjustifiable as to be violative of due process[,]" and further explained why the cases Petitioner cited in support of this argument do not substantiate the claim. Doc. 51 at 299–300 (internal quotations omitted); *id*. at n.35. The instant motion does nothing more than double-down on the prior briefing's conclusory argument. *See* Doc. 53 at 43. Considering the relative aggravating and mitigating circumstances at issue, Petitioner still does not demonstrate how the mere fact that some defendants were sentenced in accordance with a jury's life recommendation results in a violation of his equal protection rights. Accordingly, Rule 59 relief is not warranted.

## III.    CLAIM EIGHT

Petitioner next argues the court manifestly erred in rejecting his claim of judicial bias. He articulates three grounds for such error: 1) the Memorandum Opinion did not employ an "objective" standard; 2) the Memorandum Opinion did not analyze the claim pursuant to the constitutional principles found in Supreme

Court precedent; and 3) the Memorandum Opinion incorrectly considered each alleged act of bias individually rather than evaluating the trial as a whole. Doc. 53 at 44. For the reasons that follow, Petitioner fails to demonstrate manifest error.

Petitioner first argues that the court erred in applying a subjective, rather than objective, standard to his judicial bias claim. He asserts that "the Supreme Court's clearly established precedent requires courts to conduct an *objective* inquiry that 'do[es] not require proof of actual bias.'" Doc. 53 at 44 (emphasis in original) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009)). The "clearly established" authority that Petitioner now appears to fault the ACCA and this court for failing to apply, *Caperton*, was not cited in the petition or in Petitioner's merits briefing. Indeed, Petitioner did not even allege or argue that the state court should have analyzed his bias claim pursuant to an objective standard which freed him from the need to show "actual bias" by the trial court. Instead, he argued the opposite, *i.e.*, that the trial court in fact demonstrated actual bias and the ACCA erred in concluding otherwise. *See* Pet. ¶ 400 ("In failing to avoid actual bias against Mr. Hodges, the trial court's actions were improper, a violation of Mr. Hodges's constitutional rights, and an unreasonable application of clearly established Supreme Court precedent."); Doc. 31 at 107 ("The actions described above reveal the trial court's pattern of actual bias against Mr. Hodges and his trial counsel and in favor of the prosecution. A decision to the contrary is objectively unreasonable."). The

Memorandum Opinion simply addressed Petitioner's argument as it was presented. Petitioner may not employ Rule 59 to present an alternative argument that, in retrospect, he wishes he had presented prior to judgment.

Furthermore, even if Petitioner had presented his current argument prior to judgment, *Caperton* was not "clearly established" at the time of the ACCA's decision denying his bias claim.  As noted in the Memorandum Opinion, *see* Doc. 51 at 465, just a few months prior to the Supreme Court's 2009 decision in *Caperton*, the Eleventh Circuit reiterated its established holding "that 'there is no Supreme Court decision clearly establishing that an appearance of bias or partiality, where there is no actual bias, violates the Due Process Clause or any other constitutional provision.'"  *Whisenhant v. Allen*, 556 F.3d 1198, 1209 (11th Cir. 2009) (quoting *Hendrix v. Sec'y, Fla. Dep't of Corr.*, 527 F.3d 1149, 1153 (11th Cir. 2008)).  Hence, both the ACCA and this court, and even Petitioner in his argument to this court, framed analysis of the claim in terms of "actual bias."  To the extent that, in Petitioner's view, *Caperton* "clearly establishes" a different rule, *Whisenhant* makes clear it was not "clearly established" at the time of the ACCA's operative decision in this case, which was issued several years before *Caperton*, and, therefore, could not have been unreasonably applied by the ACCA.

Petitioner next appears to argue that the Memorandum Opinion improperly rejected his claim because the facts of his bias claim differ from the facts in the

several cases he did cite in his petition and merits briefing in which unconstitutional bias was found. But even here he just repeats his new *Caperton* argument about the need to apply an "objective" standard to bias claims. *See* Doc. 53 at 46. For the reasons already given, this argument is untimely and, ultimately, without merit under AEDPA review. Moreover, the Memorandum Opinion simply recognized that the actions demonstrating alleged bias on the part of the trial court proffered by Petitioner in his case—a few expressions of impatience, some adverse rulings, *etc.*,—were not just different by degree from the judicial actions in the cases cited by Petitioner, but were in fact of a wholly different, and far less troublesome, dimension. *See* Doc. 51 at 462–67. To the extent Petitioner now argues it was manifest error to analogize the facts of the cases he cited to his own when evaluating his bias claim, *see* Doc. 53 at 46, he overlooks that this is a well-established practice in such cases. *See, e.g.*, *Whisenhant*, 556 F.3d at 1210 ("It is clear that the judicial bias cases cited by Whisenhant involve totally different facts from his own case."). Petitioner has failed to demonstrate plain and indisputable error in the Memorandum Opinion.

Petitioner's final argument respecting his judicial bias claim is that the Memorandum Opinion failed to evaluate the trial court's conduct as a whole and, instead, "evaluated the various indicia of bias separately to conclude that Mr. Hodges did not demonstrate that the trial court was biased toward him." Doc. 53 at 47.

Petitioner then proceeds to review the perceived "indicia of bias" demonstrated by the trial court, from pretrial proceedings through Rule 32 proceedings. *Id*. at 47–50. Substantially every act described by Petitioner is referenced in the Memorandum Opinion in the summary of the case's procedural history, in conjunction with the Memorandum Opinion's discussion of various claims, or in the Memorandum Opinion's discussion of the bias claim itself. Petitioner points to no supposed "indicia of bias" that the Memorandum Opinion failed to apprehend.

Petitioner's argument is flawed in several respects. *First*, he did not allege in his petition that the trial court's bias against him was demonstrated by the court's actions during Rule 32 proceedings. *See* Pet. ¶¶ 387–400. Indeed, as explained in the Memorandum Opinion, Petitioner exhausted his bias claim by arguing on direct appeal to the ACCA that the trial court erred in denying his pretrial motion for recusal due to bias. Doc. 51 at 460–62. The ACCA's denial of the claim on direct appeal therefore was the operative state court decision for purposes of applying AEDPA review. *Id*. at 462. Accordingly, the trial court's subsequent actions in Rule 32 proceedings could have no bearing on the bias claim that was exhausted on direct appeal and reviewed in this court. It was not manifest error for this court to address Petitioner's claim as it was presented in the state court and pleaded in federal court.

*Second*, most of the acts described in the instant motion as "indicia of bias"— *e.g.*, the denial of funds to retain expert assistance, the purported limiting of

Petitioner's mitigation case during penalty phase proceedings, the override of the jury's sentencing recommendation and initially inadequate explanation of the override, *etc.*—are simply repackaged claims of constitutional error that are separately raised in the petition and discussed in the Memorandum Opinion. Even petitioner acknowledged this in his petition. *See* Pet. ¶ 387 ("The evidence of bias outlined below is not merely evidence of bias; each of the rulings and approaches by the trial court is in itself a violation of defendant's rights under the federal constitution . . . ."). In substantially each instance, the Memorandum Opinion explained why the state courts did not unreasonably conclude that the trial court did not err or that any error was harmless. But even to the extent the trial court may have erred as described by Petitioner, it does not follow that such error was plainly and indisputably the result of bias rather than simple judicial error.

*Third*, contrary to Petitioner's current argument, the Memorandum Opinion did look at the trial court's conduct as a whole while examining each instance of alleged bias within the context of the entire trial transcript. *See* Doc. 51 at 467–73. The Memorandum Opinion carefully reviewed the trial transcript respecting each instance of alleged bias raised by Petitioner. As explained in the Memorandum Opinion, when the few instances in which the trial court expressed some frustration with Petitioner or his counsel are considered in the context of the entire pretrial record, which included over seventy pretrial motions addressed at several pretrial

hearings spread over almost eighteen months before trial, the conclusion that the ACCA did not unreasonably apply clearly established federal law is inescapable. Petitioner has not demonstrated manifest error.

## IV.  CLAIM ONE

Petitioner argues that the court manifestly erred in denying parts of his ineffective assistance of counsel claim, specifically, Claims I.B and I.C, in which he alleged that counsel inadequately investigated and presented mitigating evidence at his trial, and Claim I.O, in which he alleged that all of counsel's alleged errors resulted in cumulative prejudice.  Doc. 53 at 51.  The Memorandum Opinion addressed Petitioner's ineffective assistance of counsel claims over approximately 200 pages.  Rather than recapitulate the Memorandum Opinion's analysis and reasoning, this order will only respond to the instant motion's most serious claims of manifest error.

### A.    Claims I.B & C

Petitioner first argues this court "overlooked the fact that evidence of the significant physical abuse Mr. Hodges endured as a child was never uncovered by trial counsel and never presented to the jury or to the trial judge[.]"  Doc. 53 at 51. Not so.  The Memorandum Opinion recognized the physical abuse evidence presented in the Rule 32 proceedings, Doc. 51 at 44–45, and recited the ACCA's reasoning in concluding that Petitioner failed to show deficient performance or

prejudice stemming from counsel's failure to discover and present such evidence. *Id*. at 55–62. The Memorandum Opinion further explained why the ACCA's conclusion on the deficient performance prong was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 688 (1984), because the ACCA reasonably found that counsel inquired of Petitioner and his mother about whether he was subject to abuse and that both witnesses denied the presence of abuse. *Id*. at 85–87.

Petitioner now argues that it was manifest error for this court to rely upon Petitioner's denial of abuse in concluding that the ACCA did not unreasonably apply *Strickland*. Doc. 53 at 54–55. For the reasons stated in the Memorandum Opinion, and the authorities cited therein, however, the court did not plainly and indisputably err. To reiterate, the ACCA found, and the record reasonably supports, that Petitioner's trial counsel inquired of Petitioner and his mother specifically whether Petitioner had been subject to abuse. Both Petitioner and his mother—the two persons with the most intimate knowledge on the subject—denied the existence of such abuse. Thus, counsel had not just his own client's denial, but a significant corroborating denial from Petitioner's mother, who otherwise provided counsel with a wealth of credible, useful evidence about Petitioner's background.[7]

---

[7] This order reaffirms the Memorandum Opinion's reliance on *Morrow v. Warden*, 886 F.3d 1138 (11th Cir. 2018), on this point. Petitioner argues the Memorandum Opinion manifestly erred in relying on *Morrow*, but his effort to distinguish that decision is unpersuasive. He asserts that "*Morrow* reflects the rule that, *where there is no red flag suggesting abuse*, counsel can reasonably rely on a client's denial of childhood abuse."

Petitioner makes much of the fact that, as recognized by the ACCA in its decision affirming the denial of this claim, his second chair trial counsel, Mr. Likins, testified in his deposition that Petitioner would "shut down" when he was asked about his father and stepfathers.  Doc. 53 at 55.  Citing academic literature about sexual abuse trauma, he argues this was a glaring "red flag" that should have caused counsel to dig deeper into Petitioner's experience of physical abuse by his father and stepfathers.  Doc. 53 at 55.  But Petitioner points to nothing demonstrating that Mr. Likins's experience with Petitioner was the same as that of his lead counsel, Mr. Ray.  Indeed, Petitioner himself has alleged that Mr. Likins "did virtually nothing to prepare the case[,]" Pet. ¶ 68, and the state court record indicates that Mr. Ray

---

Doc. 53 at 54 (emphasis Petitioner's).  He goes on to assert that "[h]ere, unlike in *Morrow*, there were clear red flags that prevented counsel from reasonably relying on Mr. Hodges's initial failure to disclose his history of childhood abuse."  *Id*. at 55.

But many of the same "red flags" Petitioner has cited in arguing that his trial counsel should have done more than rely upon the statements of Petitioner and his mother were, in fact, present in *Morrow* as well.  For example, Petitioner argued in his merits briefing that counsel should have treated witness statements showing that Petitioner was subject to spanking for discipline and that his stepfather sometimes hit him with a broom as "red flags" requiring more investigation into abuse.  Doc. 42 at 17–18.  And, in the instant motion, he argues "trial counsel's awareness that [Petitioner's mother] was regularly beaten in the home by Mr. Hodges's father and by [his stepfather] should have caused him to investigate whether [the stepfather] was also violent toward the children."  Doc. 53 at 55.  Similarly, in *Morrow*, Morrow's trial attorneys learned before trial that Morrow's mother was "battered" by his father, that Morrow saw his mother suffer this abuse, and that, according to Morrow's mother, Morrow himself "was subject to some physical abuse such as intense spanking[s]."  886 F.3d at 1143 (quotations omitted).  Petitioner's contention that there were no abuse "red flags" in *Morrow* is, by his own standard, plainly inaccurate.

34

performed the bulk of the mitigation investigation.  As noted by the ACCA, Mr. Ray testified that "he had a lot of contact with both Hodges and [Petitioner's mother]," and that he "developed a good rapport with Hodges."  Doc. 21-56 at 94.

Regarding Mr. Ray's interactions with Petitioner, the ACCA found as follows: "Ray inquired specifically of Hodges whether he had suffered any physical harm or pain as a result of whippings or beatings, and Hodges stated that he had not."  Doc. 21-56 at 97–98.  The Memorandum Opinion detailed Mr. Ray's inquiry into abuse with both Petitioner and his mother, describing the specific forms he used in questioning them about Petitioner's background.  Doc. 51 at 76 n.10.  Petitioner points to nothing in the record indicating that Petitioner "shut down" in these interactions or that Mr. Ray had any other reason to believe that Petitioner and his mother were not forthcoming in their responses to his specific questioning about abuse.

Ultimately, whatever "red flags" Petitioner argues should have caused counsel to dig deeper in his investigation, no such "red flags" were more probative and authoritative on this issue than Petitioner's and his mother's direct responses to his attorney's questioning.  This fact, coupled with the absence of institutional records that might have alerted counsel to the abuse that was not revealed by Petitioner and his mother, demonstrates that the ACCA did not unreasonably apply *Strickland*, and that this court did not plainly and indisputably err in so concluding.

Petitioner next argues that the Memorandum Opinion "contains manifest error of law and fact in its application of *Strickland*, AEDPA, and Eleventh Circuit precedent" in its review of the ACCA's prejudice analysis.  Doc. 53 at 58.  He first takes issue with the Memorandum Opinion's finding that the "ACCA reasonably concluded that much of the mitigation evidence counsel is faulted for failing to investigate and present was cumulative of the evidence that counsel did present in the penalty phase of Petitioner's trial."  Doc. 51 at 87.  But the only Rule 32 evidence he cites as "new" and not cumulative of the trial evidence is the very abuse evidence that, as explained in the Memorandum Opinion and again in this order, the ACCA reasonably concluded counsel was not deficient in failing to discover.  It is a rudimentary principle of *Strickland* analysis that Petitioner may not distort *Strickland*'s prejudice inquiry with the inclusion of evidence that his counsel was not deficient in failing to discover.  *See, e.g.*, *Raheem v. GDCP Warden*, 995 F.3d 895, 908 (11th Cir. 2021) ("To successfully show ineffective assistance of counsel, Raheem must establish that counsel's performance was constitutionally deficient . . . and that the deficient performance prejudiced the defendant[.]").

More importantly, neither the Memorandum Opinion nor the ACCA described Petitioner's "new" abuse evidence as cumulative.  Instead, the ACCA described as cumulative Petitioner's Rule 32 evidence about the following: his exposure to violence in the home (not his personal experience of physical abuse)

(*see* Doc. 21-56 at 96); substance abuse in his family (*id*. at 108–09); poverty (*id*. at 112); and instability and lack of positive male role models (*id*. at 115).   The Memorandum Opinion simply acknowledged that the ACCA's findings on these points were reasonable.  Doc. 51 at 87–89.  Petitioner fails to show manifest error.

Petitioner next argues "this Court was wrong to hold that the jury's 8-4 recommendation of a life sentence weighs against finding prejudice here."  Doc. 53 at 61.  He submits that Eleventh Circuit precedent, namely, *Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008), "requires just the opposite[.]"  *Id*.  The Memorandum Opinion did not, however, "hold" that the jury's life recommendation "weighs against" a finding of prejudice.  Rather, the Memorandum Opinion balanced the *Williams* findings highlighted by Petitioner with the Eleventh Circuit's more recent revisiting of this question in *Lee v. Comm'r, Ala. Dep't of Corr*., 726 F.3d 1172, 1196 (11th Cir. 2013).  In *Lee*, the Eleventh Circuit concluded that, where trial counsel presented family members' testimony about the defendant's background as mitigation evidence, "the fact that the jury recommended life imprisonment counsels against a determination that [the defendant] was prejudiced under *Strickland*."  *See* Doc. 51 at 91.  Citing even more recent Circuit authority, the Memorandum Opinion recognized "there is some tension in these decisions regarding how to interpret a jury's life recommendation in assessing prejudice."  *Id*. (citing *Ferguson v. Comm'r, Ala. Dep't of Corr*., 69 F.4th 1243, 1261 (11th Cir. 2023)).  At most, in view of all

the Circuit authorities cited therein, the Memorandum Opinion simply concluded that the jury's life recommendation should not be given conclusive weight on the question of prejudice. The Memorandum Opinion did not plainly and indisputably err in outlining the Eleventh Circuit's various authorities on this point.

More fundamentally, even assuming only *Williams* may inform this inquiry, it remains that Petitioner is not entitled to relief and that the Memorandum Opinion did not manifestly err in failing to give it controlling weight. This is so because *Williams* expressly subsumed its conclusion that the jury's life recommendation supported a finding of prejudice within its larger finding that "this case is not highly aggravated." 542 F.3d at 1343. Indeed, the trial court in *Williams* overrode the jury's 9-3 life recommendation "on the basis of a single statutory aggravating circumstance [the robbery-murder aggravator]—one that is an element of the underlying capital murder charge." *Id*. Because of this paucity of aggravating circumstances supported by aggravating evidence, the Eleventh Circuit opined in *Williams*, the "relative weakness of the state's death penalty case" was "underscored" by the jury's life recommendation. *Id*.

Here, by contrast, the State's case for the death penalty was not weakly supported. As explained in the Memorandum Opinion, the trial court's override was supported by its finding of not just the robbery-murder aggravator, but also the

"particularly powerful"[8] "heinous, atrocious, or cruel" (HAC) aggravating circumstance. *See* Doc. 51 at 89–91. The Memorandum Opinion observed that the ACCA reasonably relied upon the strength of this aggravator in its reweighing of the aggravating and mitigating evidence and that, in view of the application of the HAC aggravator, Petitioner's similar argument that his case also was not highly aggravated "fails to reckon with the substantial aggravating weight owed to the existence of the HAC aggravating circumstance[.]" *Id*. at 90. In positing *Williams* as illustrative of manifest error, it is apparent Petitioner still fails to reckon with the weight of this aggravating circumstance and how his case differs from *Williams*. The Memorandum Opinion did not plainly and indisputably err.

Petitioner's final argument respecting the Memorandum Opinion's analysis of prejudice is that the court manifestly erred in finding reasonable the ACCA's conclusion that additional evidence about Petitioner's difficult background would have been of limited mitigating value, and possibly would have been counterproductive, because none of his siblings were convicted of serious crimes. *See* Doc. 53 at 65. The Memorandum Opinion cited several appellate opinions supporting this principle, *see* Doc. 51 at 93, and this order can now add to those authorities the very recent Eleventh Circuit decision in *Davis v. Comm'r, Ala. Dep't of Corr.*, 120 F.4th 768, 794 (11th Cir. 2024) ("Additionally, the fact that [the

---

[8] *Boyd v. Allen*, 592 F.3d 1274, 1302 n.7 (11th Cir. 2010).

petitioner's] siblings and his cousin had gone on to lead successful lives, despite experiencing the same physically abusive upbringing, may have undermined the mitigation value of the evidence of physical abuse."). While Petitioner obviously disagrees with the principle articulated in these cases, it is apparent that the Memorandum Opinion could not have plainly and indisputably erred in relying upon relevant Circuit authority applying this principle.

### B.    Claim I.O

Petitioner's final claim of manifest error concerns the Memorandum Opinion's disposition of his claim of cumulative error. At the outset, as recognized in the Memorandum Opinion, *see* Doc. 51 at 232–33, the Eleventh Circuit has repeatedly declined to opine whether a claim of cumulative prejudice is even cognizable in federal habeas corpus as a matter of clearly established federal law. The instant motion acknowledges this circumstance and further highlights a split in circuit level authorities on the viability of the "'cumulative error' doctrine." Doc. 53 at 68–69, n.18. While Petitioner obviously sides with those Circuits which have recognized claims of this sort, the Memorandum Opinion could not have plainly and indisputably erred in failing to find merit in a claim of disputed cognizability.

Moving past this dispositive impediment to the instant motion, it is important to observe that the Memorandum Opinion discussed Petitioner's cumulative error claim at a level of generality which was more than commensurate with his cursory

pleading of the claim and supporting argument.  The claim was pleaded, in its entirety, as follows: "While each of the above errors is in itself a sufficient basis upon which to conclude that trial counsel was inadequate, the accumulation of these errors also amounts to ineffective assistance that was highly prejudicial to Mr. Hodges at each phase of the proceeding."  Pet. ¶ 265.  Petitioner's merits brief also presented only a general argument about counsel's alleged cumulative ineffectiveness.  *See* Doc. 31 at 57.  The same goes for his reply brief.  *See* Doc. 42 at 26.  Hence, addressing the claim of cumulative prejudice due to counsel's alleged guilt phase errors, the Memorandum Opinion found as follows:

> As for the cumulative effect of counsel's alleged guilt-phase errors, this court is not persuaded that Petitioner can show prejudice, cumulative or otherwise.  For the reasons explained earlier in this opinion, it is not reasonably probable that Petitioner would not have been convicted of capital murder had counsel not committed the various acts or omissions characterized by Petitioner as deficient.  Counsel performed reasonably in challenging the evidence presented against Petitioner: he demonstrated Murph's credibility issues; he gamely attempted to show why Porter's testimony and earlier police statement might be the product of her fear and intimidation; he emphasized the lack of fingerprint evidence implicating Petitioner; and he presented Petitioner's testimony providing an alternative explanation for the physical evidence that did link him to the murder.  None of counsel's alleged errors, if corrected, would have excised an essential pillar of the State's evidence, cast such evidence in a markedly less inculpatory light, or provided Petitioner with exculpatory evidence of a caliber sufficient to undermine confidence in the outcome of his trial.  Petitioner has failed to show how counsel's alleged guilt-phase errors, even considered cumulatively, could have prejudiced the outcome of his trial.

Doc. 51 at 234–35.

Petitioner now presents a more focused argument in support of this claim, asserting, "if trial counsel had competently challenged the only physical evidence tying Mr. Hodges to the crime scene and, specifically to the driver's side of the van, there is a reasonable probability that the jury would have convicted Mr. Hodges of a lesser included offense such as felony murder."  Doc. 53 at 69.  He then proceeds to repeat some of his allegations and argument respecting counsel's alleged failure to adequately challenge evidence linking Petitioner to the pants soaked in the victim's blood and a cigarette butt bearing saliva with his DNA which was, according to trial testimony, recovered on the driver's side floorboard of the victim's van.  *Id*. at 69–70.  He thus appears to fault the Memorandum Opinion for failing to articulate reasons supporting its finding that he was not cumulatively prejudiced which specifically "relate to trial counsel's errors with respect to the only physical evidence linking Mr. Hodges to the crime scene."  *Id*. at 71.

The short answer to Petitioner's new argument is that he could have made these arguments in support of his cumulative error claim prior to judgment, but he did not do so and he may not employ Rule 59 to present them now.  The slightly longer answer is that the Memorandum Opinion addressed each allegation of ineffective assistance Petitioner restates in the instant motion and found that they failed even to allege sufficient facts to support his claim of prejudice.  For example, Petitioner repeats the petition's allegation that counsel failed to adequately cross-

examine Marlo Murph on his identification of the bloody pants as belonging to Petitioner. Doc. 53 at 69. But, as discussed in the Memorandum Opinion, the petition both incorrectly alleged that counsel failed to challenge Murph's identification and wholly failed to allege what more counsel should have done in his cross-examination of Murph to challenge Murph's identification of the pants. Doc. 51 at 97. Petitioner still does not allege or argue what more counsel could have done. The same infirmity burdens Petitioner's repeated claims challenging the alleged inadequate cross-examination of other witnesses, failure to adequately investigate the blood-stained pants, and failure to object to the trial court's intervention on Murph's identification of the pants. The Memorandum Opinion addresses each of these claims and explains why Petitioner did not even adequately allege prejudice in support of the claims, much less demonstrate prejudice which could "accumulate" to support a finding of cumulative prejudice. *See id.* at 104, 108, 131–32, and 147–48.

Likewise, the Memorandum Opinion adequately addressed Petitioner's claim that he was prejudiced by counsel's failure to object to the prosecution's apparent mix-up of the exhibit numbers respecting the two cigarette butts recovered from the victim's van. Doc. 51 at 176–77. Where Petitioner failed even to allege sufficient facts to establish the requisite prejudice, it follows that he could not have suffered

cumulative prejudice from the aggregation of such claims. Petitioner fails to show

manifest error.

## CONCLUSION

For the reasons given above, Petitioner's Motion to Alter or Amend the

Judgment (Doc. 53) is DENIED.

DONE, on this the 17th day of December 2024.

_____

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

44